UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>JESSE LAMONE STEWART,<br><br>　　　　Defendant. | 5:19-CR-50167-JLV-07<br><br>REPORT AND RECOMMENDATION |

Pending is Defendant's Motion to Dismiss Superseding Indictment (Doc. 179) and Supplemental Motion to Dismiss Indictment (Doc. 222). A hearing was held on Monday, October 19, 2020. Defendant was present via video conference and represented by his attorney of record, Terry Pechota. The Government was represented by the Assistant United States Attorney Kathryn Rich. Four witnesses testified at the hearing, and ten exhibits were received into evidence. Supplemental briefing concluded on December 7, 2020. Based on a careful consideration of all the evidence, and counsel's written and oral arguments, the Court respectfully makes the following:

**RECOMMENDATION**

It is respectfully recommended that Defendant's Motion to Dismiss Superseding Indictment (Doc. 179) and Supplemental Motion to Dismiss Indictment (Doc. 222) be denied.

## JURISDICTION

Mr. Stewart is charged in a Superseding Indictment with Conspiracy to Distribute Controlled Substance in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A).  The pending Motion was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and United States District Judge Jeffrey L. Viken's Standing Order dated April 1, 2018.

## FACTUAL BACKGROUND

A thorough factual background is set forth in the court's Report and Recommendation on Mr. Stewart's first motion to suppress.  (Doc. 135).  This section presents a general factual background.  Facts specific to each of Mr. Stewart's arguments are discussed in the relevant subsections.

On January 22, 2020, Mr. Stewart was charged in a Superseding Indictment with the above-named offense.  (Doc. 88).  Specifically, the Superseding Indictment reads:

> Beginning on a date unknown but no later than on or about July 2019, and continuing through the date of this Superseding Indictment, in the District of South Dakota and elsewhere, the defendants, Edward Lamont Martin, Sara Skinner, Keeler Stands, Tyler Olson, Carmen Dillon, Melanie Vance, Jesse Lamone Stewart, Christopher James and Kirbesha Bailey, knowingly and intentionally combined, conspired, confederated and agreed with each other and other persons known and unknown to the Grand Jury, to knowingly and intentionally distribute and to possess with the intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, all in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A).

(Doc. 88).

On July 10, 2020, Mr. Stewart filed the pending Motion to Dismiss Indictment. (Doc. 179). The Government filed a Response in Opposition to the Motion on July 17, 2020. (Doc. 185). On October 8, 2020, Mr. Stewart filed the pending Supplemental Motion to Dismiss Indictment to further address his claims of prosecutorial and investigatory misconduct. (Doc. 222). As stated above, a hearing was held on October 19, 2020. The Government filed a Supplemental Response in Opposition to both pending motions on November 16, 2020. (Doc. 249). Mr. Stewart filed a Reply to the Government's Response on December 7, 2020. (Doc. 277).

Mr. Stewart argues the Superseding Indictment "fails to sufficiently support the charge of conspiracy." (Doc. 179). Specifically, he argues the Superseding Indictment does not allege facts to support the "intentional" element of the crime of conspiracy to distribute a controlled substance. (Doc. 179).

The Government argues the language in the indictment is legally sufficient. (Doc. 185). Additionally, the Government contends specific facts as to the defendant's involvement have been included in discovery already provided to the defendant. The government also states they have provided the defendant with essentially "'open' discovery of information and documentation in its possession," including information it is not required to share, such as the names of potential witnesses and Jencks materials. (Doc. 185). Lastly, the Government notes that "[w]hether there is evidence establishing the defendant's guilt will be resolved at trial." (Doc. 185)

Mr. Stewart also argues prosecutorial and investigatory misconduct has "so tainted [Mr. Stewart's] rights to a fair trial that dismissal with prejudice is warranted." (Doc. 179). Specifically, he alleges government agents gave false and misleading testimony at grand jury proceedings and the hearing on this motion and made false statements in the affidavit in support of the search warrant. (Docs. 179, 222).

The Government responds there was no false testimony by Special Agent Patterson or Investigator Rose at the hearing held before this court on February 12, 2020. (Doc. 185). The Government also addresses, and refutes, each instance in which Mr. Stewart claims AUSA Kathryn Rich, SA George, SA Patterson, or Investigator Rose lied or made misleading statements during the grand jury proceedings or in the affidavit. (Doc. 249).

## DISCUSSION

The defendant requests the court dismiss the superseding indictment for four reasons; (i) failure to state an offense as required by Federal Rules of Criminal Procedure 7(c)(1); (ii) failure to charge essential elements of the counts alleged against the defendant; (iii) vagueness; and (iv) investigatory and prosecutorial misconduct. (Doc. 179). The court will address the arguments in two sections.

1. **Adequacy of the Indictment**

    **A. Legal Standard**

Federal Rule of Criminal Procedure 12(b)(3)(B)(iii) and 12(b)(3)(B)(v) provides that a defect in the indictment, such as lack of specificity or failure to

state an offense, must be raised by pretrial motion if the basis for the motion is then readily available and the motion can be determined without a trial on the merits. FED. R. CRIM. P. 12(b)(3)(B). When ruling on a motion to dismiss, a court must accept all factual allegations in the indictment as true. See United States v. Sampson, 371 U.S. 75 (1962). A valid indictment must allege that "the defendant performed acts which, if proven, constitute the violation of law for which he is charged." United States v. Polychron, 841 F.2d 833, 834 (8th Cir.1988). If an indictment fails to allege acts that constitute a violation of law, then it may be dismissed. Id.

An indictment adequately states an offense if it "contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution." United States v. Sewell, 513 F.3d 820, 821 (8th Cir.2008) (quoting United States v. Hernandez, 299 F.3d 984, 992 (8th Cir.2002)). This is a low bar, and an indictment will normally be found valid unless it is so defective that no reasonable construction of it properly charges the offense for which the defendant is being tried. See id. at 821. Normally, an indictment that tracks the statutory language is sufficient. Id.

The essential elements of conspiracy under 21 U.S.C. § 846 are the existence of an agreement between two or more individuals to distribute drugs; that the defendant knew of the agreement; and that he intentionally joined the agreement. United States v. Moore, 639 F.3d 443, 447 (8th Cir. 2011); see

5

United States v. Stockman, Cr. No. 09-50029-KES-01, 2009 WL 2595613, at *1, 3 (D.S.D. Aug. 20, 2009). An indictment is sufficient if it alleges "a conspiracy to distribute drugs, the time during which the conspiracy was operative and the statute allegedly violated, even if it fails to allege any specific act in furtherance of the conspiracy." United States v. George, 548 F. Supp. 2d 713, 716–17 (D.S.D. 2008).

The identity of a defendant's co-conspirators is not an essential element of conspiracy and need not be specified in the indictment. See United States v. Oseby, 148 F.3d 1016, 1024 (8th Cir. 1998). Nor does an indictment need to provide a specific amount of the controlled substance in order to be sufficient. United States v. Pippenger, 552 F. Supp. 2d 990, 994 (D.S.D. 2008).

### B. Analysis

Here, the superseding indictment is sufficient. It alleges each of the essential elements of conspiracy to distribute a controlled substance and provides enough detail to put Mr. Stewart on notice of the charge against him. The superseding indictment is not vague or indefinite. Contrary to Mr. Stewart's argument, the indictment itself need not actually prove he acted "intentionally." The allegation Mr. Stewart acted intentionally satisfies the Government's requirement to allege the *mens rea* element in the instant case.

It is not the job of the indictment to prove each element of the offense, but to inform the defendant of the offense for which he is charged. When ruling on a motion to dismiss, a court must accept all factual allegations in the indictment as true. See United States v. Sampson, 371 U.S. 75 (1962).

6

Whether the Government has evidence to prove the "intentional" element is an issue to be resolved at trial. Therefore, Mr. Stewart's argument that the superseding indictment should be dismissed based on insufficiency of the indictment itself should be denied.

**2.   Investigatory/Prosecutorial Misconduct**

The defendant asserts several instances of prosecutorial and investigatory misconduct he contends warrant dismissal of the present superseding indictment. They are: 1) false testimony by DCI Special Agent Preston Patterson and Pennington County Sherriff's Office Investigator Dan Rose during grand jury proceedings and at the suppression hearing held before this court on February 12, 2020 concerning whether the defendant was wearing his coat at the time of the arrest; 2) false grand jury testimony by DCI Special Agent BJ George about what Mr. Stewart stated was his address; 3) deception in the affidavit in support of the search warrant about Sasha Cook's address; 4) misleading grand jury testimony by SA George concerning Sasha Cook's address; 5) misleading questions and statements by the AUSA and SA George at grand jury proceedings about packages sent through the mail; and 6) false testimony by SA Patterson and Investigator Rose that Mr. Stewart consented to the search of his phone and person during his arrest. (Doc. 179, 222).

    **A. Grand Jury Testimony and Suppression Hearing**

        **i.   Legal Standard**

As a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors actually prejudiced the defendant. Bank of Nova Scotia v. United States, 487 U.S. 250, 254 (1988); United States v. McKie, 831 F.2d 819, 821 (8th Cir. 1987). Actual prejudice results if any violations had an effect on the grand jury's decision to indict. Bank of Nova Scotia, 487 U.S. at 263.

Furthermore, even when a grand jury witness delivers perjured testimony, the false statements must be material to the offense charged for dismissal to be appropriate. United States v. Moore, 184 F.3d 790, 794 (8th Cir. 1999); United States v. Levine, 700 F.2d 1176, 1180 (8th Cir. 1983). However, dismissal is inappropriate if sufficient accurate information supports the decision to indict. Levine, 700 F.2d at 1180. "As long as there is some competent evidence to sustain the charge issued by the Grand Jury, an indictment should not be dismissed." Id. (quoting Truchinksi v. United States, 393 F.2d 627, 633 (8th Cir. 1968)).

The standard for dismissal based on false testimony at the suppression hearing is similar to that stated above for grand jury testimony. "To establish a due process violation based on the prosecutorial use of false testimony, a defendant must show that "(1) the prosecution used perjured testimony; (2) the prosecution should have known or actually knew of the perjury; and (3) there was a reasonable likelihood that the perjured testimony could have affected the jury's verdict."' United States v. Bass, 478 F.3d 948, 951 (8th Cir. 2007) (quoting United States v. Funchess, 422 F.3d 698, 701 (8th Cir. 2005)). Thus,

the defendant must not only prove the false testimony, but also that the prosecution knew or should have known of the false testimony and that it was material. United States v. Flores-Lagones, 993 F.3d 550 (8th Cir. 2021).

### ii. Analysis

**Testimony Concerning Mr. Stewart's Coat**

Mr. Stewart argues Investigator Rose and SA Patterson provided false testimony at grand jury proceedings and the suppression hearing held before this court on February 12, 2020. (Doc. 179). According to Mr. Stewart, because he is photographed outside the room *without* a coat on, Investigator Rose and SA Patterson must have been lying when they stated that he was wearing a coat at the time he was detained. (Doc. 179).

The relevant portion of this testimony begins when Mr. Stewart is called out of his room by law enforcement. SA Patterson testified that immediately after Mr. Stewart exited the room, he secured him by grabbing his arm and took a cell phone he was holding. (Doc. 125 at 16). Investigator Rose then handcuffed Mr. Stewart so other officers could conduct a safety sweep of the hotel room. (Id. at 16-17). Once the other officers conducted the initial sweep of the room to make sure there were no other occupants present, SA Patterson brought Mr. Stewart back into the hotel room where he and Investigator Rose conducted a pat down of Mr. Stewart, while he was wearing a coat. (Id. at 18).

Investigator Rose then testified that no photographs were taken during the time it took him and SA Patterson to detain Mr. Stewart and for the other officers to conduct a sweep of the room. (Id. at 58). Once the room was

9

secured, and the pat down was complete, the photographer began to take overall photos of the scene while Investigator Rose set up to perform his role as evidence custodian. (Id.) After these initial photographs, the agents continued to search the room for approximately an hour. (Id. at 27).

Neither Investigator Rose nor SA Patterson's testified that Mr. Stewart was photographed immediately when he was detained in the hallway. Because the question was not asked at the hearing, the court is unsure of the exact point when Mr. Stewart was photographed in the hallway. However, just because Mr. Stewart is not wearing a coat at the time he was photographed does not mean Investigator Rose and SA Patterson lied when they testified he was wearing a coat when they first encountered him in the hallway and when they conducted a pat down immediately after bringing him into the room. Mr. Stewart could have taken off his coat, and been photographed without it on, at any time during the approximately one hour it took to search the room.

The court, having personally observed Investigator Rose and SA Patterson at the hearing on this matter, finds their testimony to be credible. Additionally, the court finds no inconsistencies in the testimonies of either Investigator Rose or SA Patterson concerning whether the defendant was wearing a coat at the time of his detention. The court rejects the defendant's strained and inaccurate interpretation of the evidence presented at the evidentiary hearing as set forth in his reply brief. (Doc. 277 at pp. 1-3). As such, Mr. Stewart has failed to meet his burden of proving either SA Patterson or Investigator Rose delivered false testimony at the grand jury proceedings or

the suppression hearing. Additionally, whether Mr. Stewart was wearing his coat at the time is not material to the offense charged in this case. Therefore, Mr. Stewart's argument the indictment should be dismissed upon these grounds should be denied.

**Testimony Concerning Mr. Stewart's Address**

Mr. Stewart next argues SA George falsely testified before the grand jury that Mr. Stewart told law enforcement his address was 3213 West Main Street, which is the address of a UPS store. (Doc. 222). At the grand jury proceedings, SA George testified that Mr. Stewart "provided an address to law enforcement which ended up coming back to the UPS Store in Rapid City." (Doc. 230, Exhibit 7 at 18.)

Mr. Stewart's address was obtained from a law enforcement database. (Doc. 238 at 65). This database entry was based on a traffic stop conducted by the South Dakota Highway Patrol on March 9, 2019. (Id. at 66). While it is true Mr. Stewart did not provide the address of the UPS store to law enforcement on this particular occasion, he did provide this address to law enforcement at the time of the initial entry into the database. Therefore, the court finds Mr. Stewart has not met his burden of proving SA George made a false statement to the grand jury when he stated Mr. Stewart had provided law enforcement with an address of 3213 West Main Street.

Additionally, neither the timing of when Mr. Stewart told law enforcement his address nor what he actually told law enforcement concerning his address

11

are material to the charged offense in this case. Mr. Stewart's request that the indictment be dismissed on these grounds should be denied.

**Testimony Concerning Phone Call Between Mr. Stewart and Sasha Cook**

Mr. Stewart argues grand jury testimony by SA George concerning a phone call between Mr. Stewart and Sasha Cook was misleading. (Doc. 222). SA George stated the phone call was "in regards to moving and getting the money out of the bank and having Sasha leave town." (Doc. 230, Ex. 7 at 18). Mr. Stewart argues this was misleading because he asserts Cook was in North Carolina at the time, and the statement created the misleading implication that she was in Rapid City. (Doc. 222).

Mr. Stewart presents nothing to the court to support the contention that law enforcement knew Cook was actually in North Carolina at the time of the call, or that she even was in North Carolina at the time. SA George testified at the hearing on the present motion that the location of Cook at the time of the call was unknown to law enforcement. (Doc. 238 at 74). Mr. Stewart has not met his burden of proving SA George made a false statement concerning the phone call between Mr. Stewart and Sasha Cook.

Mr. Stewart's request that the indictment be dismissed because of false statements concerning the phone call between Mr. Stewart and Sasha Cook should be denied.

**Testimony Concerning Packages Sent Through the Mail**

Mr. Stewart argues the statement by SA George that Edward Martin, a co-defendant in this case, was mailing methamphetamine to Sasha Cook

12

created the false and misleading implication that he was also mailing methamphetamine to Mr. Stewart. (Doc. 222). SA George testified "Sasha Cook is of interest to law enforcement because she has received three packages for Mr. Martin in the mail in the past." (Doc. 230, Ex. 7 at 18).

SA George testified at the hearing on the present motion that he did not testify as to what was in the packages because he did not know. (Doc. 238 at 76). Additionally, he reiterated that Cook was considered a "person of interest," mainly due to the fact that she received the packages and law enforcement knew that using mail carriers to transport money and methamphetamine was part of the conspiracy. (Id. at 76-77). As such, Mr. Stewart has not met his burden of proving SA George made a false statement concerning whether Cook was considered a person of interest, and why she was considered person of interest. Mr. Stewart's request the indictment be dismissed upon these grounds should be denied.

Mr. Stewart also argues the AUSA provided a false and misleading statement at the grand jury proceedings when she asked "So is it fair to say that through the entire investigation that Mr. Martin and these associates are using UPS, FedEx, Postal Service to receive methamphetamine in the mail and then also send out packages of money occasionally?" (Doc. 230 at 19). The question was answered affirmatively by SA George.

It was, and continues to be, SA George and AUSA Rich's position that this is exactly what is happening in this conspiracy. (Doc. 238 at 78). This position is based on the information obtained through an investigation

13

conducted by law enforcement.  Id.  Therefore, Mr. Stewart has not met his burden of proving false testimony concerning the structure of the alleged conspiracy and his request the indictment be dismissed upon these grounds should be denied.

### B. Affidavit and Search Warrant

#### i. Legal Standard

A defendant is entitled to a Franks hearing if he makes a substantial showing that an affiant to a search warrant application knowingly or intentionally, or with reckless disregard for the truth, made false statements or omitted material facts and that the alleged statements were necessary to a finding of probable cause.  Franks v. Delaware, 438 U.S. 154, 155-56 (1978). "Whether [the defendant] will prevail at that hearing is, of course, another issue." Id. at 172.

The Fourth Amendment requires that a search warrant may be issued only upon a showing of probable cause.  United States v. Williams, 477 F.3d 554, 557 (8th Cir. 2007).  In order to challenge a finding of probable cause under Franks, a defendant must show, by a preponderance of the evidence, that (1) the affiant, in preparing the search warrant affidavit, deliberately and knowingly, or with reckless disregard for the truth, included falsehoods; and (2) the affidavit lacks sufficient content to support a finding of probable cause if the challenged information is set aside.  Franks, 438 U.S. at 171-72; United States v. Humphreys, 982 F.3d 254, 259 n.2 (8th Cir. 1992).

The defendant's challenge must be more than conclusory and must be supported by the evidence. Franks, 438 U.S. at 171. The defendant must specify which parts of the affidavit are claimed to be false and must provide a statement of supporting reasons or an "offer of proof." Id. Finally, the defendant may only challenge the veracity of the affiant's statements and not that of nongovernmental informants because a reviewing court is concerned only with whether the affiant knowingly and deliberately included falsehoods or recklessly omitted the truth. Id; see also United States v. Amburn, 412 F.3d 909, 917 (8th Cir. 2005) (citing Franks, 438 U.S. at 171).

"To show reckless disregard for the truth, we do not look simply at whether a statement included in the affidavit was true; rather, we ask whether, when looking at all the evidence available to the officer, the officer 'must have entertained serious doubts as to the truth of his [or her] statements or had obvious reasons to doubt the accuracy of the information he [or she] reported.'" United States v. Neal, 528 F.3d 1069, 1072 (8th Cir. 2008) (quoting United States v. Schmitz, 181 F.3d 981, 986-987 (8th Cir. 1999) (alterations in original)). Under this standard, "every fact recited in the warrant affidavit [need not] necessarily [be] correct." United States v. Buchanan, 574 F.3d 554, 563 (8th Cir. 2009) (quoting Franks, 438 U.S. at 165). The Eighth Circuit has held that an officer "may rely upon information received through an informant . . . so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge[.]" United States v. Koons, 300 F.3d 985, 991 (8th Cir. 2002) (internal quotations omitted).

### ii. Analysis

Here, Mr. Stewart argues SSA George made a false statement in the affidavit in support of the search warrant by incorrectly stating Sasha Cook's address. (Doc. 222). He also argues SSA George's statement in the affidavit, that Keeler Stands, a co-defendant in this case, provided law enforcement with this address in a proffer, was false. (Id.)[1]

The affidavit in support of the search warrant states that Sasha Cook "may reside near 3621 West Chicago Street." (Doc. 222, Ex. 3 at 23). The information was based on information provided by Keeler Stands and another confidential informant, as well as a vehicle registration issued to both Cook and Mr. Stewart. (Doc. 238 at 72).

Additionally, the affidavit states Keeler Stands "previously identified this approximate location to law enforcement when he drove Martin to Cook's address to pick up a package containing methamphetamine in September 2019." (Doc. 222, Ex. 3 at 23-24). Mr. Stewart offers no proof that this statement is false other than the assertion that Mr. Stands' written proffer does not mention Sasha Cook living at that address. Simply because the address is not contained in the proffer does not mean Mr. Stands did not provide the information to law enforcement at another time.

---

[1] Mr. Stewart also challenges the validity of the search warrant and the affidavit in support thereof in his latest Motion to Suppress (Doc. 255). The court will be filing a separate Report and Recommendation address the issues raised in the Motion to Suppress.

16

Therefore, Mr. Stewart has not met his burden of proof that SA George either lied or showed a reckless disregard for the truth in his affidavit in support of the search warrant. Additionally, these statements concerned a fact about person not charged in the conspiracy. They were certainly not necessary to a finding of probable cause. As such, the search warrant, and the affidavit in support thereof, should be found constitutional.

### C. Consent

Mr. Stewart argues SA Patterson falsely testified at the suppression hearing before the court on February 12, 2020 that Mr. Stewart gave consent to give him his phone. He also argues Investigator Rose falsely stated Mr. Stewart gave consent to search his person. (Doc. 222).

The court has already decided Mr. Stewart did in fact consent to the search of his person and will not open it up for reconsideration. (See Doc. 162 at pg. 10 ("The court finds Mr. Stewart gave law enforcement valid consent to search his person.")). Therefore, the court finds no false or misleading statements by either SA Patterson or Investigator Rose concerning consent to search Mr. Stewart's phone or person. Mr. Stewart's argument the indictment should be suppressed because Mr. Stewart did not give consent to search his person is without merit.

## **CONCLUSION**

Based on the above analysis, it is hereby

RECOMMENDED that Defendant's Motion to Dismiss Superseding Indictment (Doc. 179) and Supplemental Motion to Dismiss Indictment (Doc. 222) be denied.

## **NOTICE TO PARTIES**

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require *de novo* review by the District Court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 7th day of May, 2021.

BY THE COURT:

_____
DANETA WOLLMANN
United States Magistrate Judge