UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JESSE LAMONE STEWART,<br><br>Defendant. | 5:19-CR-50167-KES-07<br><br>REPORT AND RECOMMENDATION |

Pending is Defendant's Second Motion to Suppress. (Doc. 255). Because there is sufficient testimony and evidence previously entered into the record, the court issues its report and recommendation without an additional evidentiary hearing. Based on a careful consideration of all the evidence, and counsel's written and oral arguments, the Court respectfully makes the following:

## **RECOMMENDATION**

It is respectfully recommended that Defendant's Motion to Suppress be denied.

## **JURISDICTION**

Defendant is charged in an Indictment with Conspiracy to Distribute a Controlled Substance in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). The pending Motion was referred to the Magistrate Judge

pursuant to 28 U.S.C. § 636(b)(1)(B) and United States District Judge Jeffrey L. Viken's Standing Order dated April 1, 2018.

## **FACTUAL BACKGROUND**

The relevant facts pertaining to the motion are detailed in this Court's previous Report and Recommendation (Doc. 135); the District Court's Order adopting the Report and Recommendation (Doc. 162); this Court's Report and Recommendation on the Motions to Dismiss (Doc. 334).

Previously, Mr. Stewart did not specifically raise a challenge to the validity of the search warrant and resulting seizure and search of the cell phones. However, he now seeks to challenge the validity of those search warrants and asks the court to "quash" the evidence of the cell phones and the contents contained therein.

## **DISCUSSION**

## I.    **Whether There was Probable Cause to Support the Search Warrants**

The Fourth Amendment requires that a search warrant may be issued only upon a showing of probable cause. United States v. Williams, 477 F.3d 554, 557 (8th Cir. 2007). A search warrant is supported by probable cause if the supporting affidavit presents a fair probability that evidence or contraband will be found in the location to be searched. See United States v. Gladney, 48 F.3d 309, 312 (8th Cir. 1995). Supporting affidavits must be read in a common-sense fashion and should be evaluated based on the totality of the circumstances. United States v. Edmiston, 46 F.3d 786, 789 (8th Cir. 1995).

"Deference is accorded an issuing magistrate's probable cause determination."
United States v. Brown, 584 F.2d 252, 256 (8th Cir. 1978).

## A.    Search Warrant issued in 5:19-MJ-145

Although the court did not specifically address whether the search warrant was supported by probable cause in its prior Report and Recommendation, the court found that the information contained within the affidavit, along with other factors, constituted probable cause for Mr. Stewart's arrest.  In discussing the facts contained the in affidavit, the court made the following findings of fact:

> [T]he affidavit in support of the search warrant details an investigation whereby the South Dakota Division of Criminal Investigation utilized a Confidential Informant ("CI") to engage in a series of controlled buys of methamphetamine and firearms.  (Ex. 1).  Several of Mr. Stewart's co-defendants were reported to be involved with these controlled buys over a period of time from September of 2019, until December of 2019, when the search warrant was executed.  Id.

> As part of the investigation, law enforcement was made aware that two of the individuals involved in the alleged methamphetamine distribution, Mr. Martin and Ms. Skinner, were no longer residing at their original address, but instead, were frequenting various hotels throughout Rapid City.  Id. at p. 23, 25.  One Source of Information, specifically told law enforcement that he/she had been meeting Mr. Martin at the Econo-Lodge  located at 625 E. Disk Drive, Rapid City, SD, which is where Mr. Martin was staying.  Id. at p. 27.  The CI assisting law enforcement also confirmed that Mr. Martin was staying at the Econo-Lodge in Rapid City, SD.  Id.  The same CI also informed law enforcement that Mr. Martin had brandished a military style rifle, which was being stored under the bed at a room in the Ramada Inn where Ms. Skinner was staying.  Two controlled buys were arranged between the CI, Ms. Skinner, and Mr. Martin at the Ramada hotel room.  Id. at p. 31-32.

> Law enforcement later identified Ms. Skinner residing at an apartment in Rapid City and observed her often traveling to the Econo-Lodge where Mr. Martin was still residing.  Id. at p. 35.  On

December 11, 2019, law enforcement obtained a guest list and room assignment for the Econo-Lodge in Rapid City, SD.  Id.  It was determined that Mr. Martin was staying in room number 326 and had a scheduled check-out date of December 12, 2019.  Id. at p. 34-35.  Based in part on this information, law enforcement obtained a search warrant on the same day for the hotel room of Mr. Martin at the Econo-Lodge located at 625 East Disk Drive, Room #326.  (Ex. 1-2).  The search warrant also authorized the search of Ms. Skinner's apartment, storage unit, and 2008 Red Ford Escape.  (Ex. 1-2).

Mr. Stewart is only mentioned once by name in the affidavit, wherein UPS identified a carrier letter sent from Mr. Martin to Mr. Stewart in Cary, NC.  Id. at p. 30.

Doc. 135 at pp. 2-4

The affidavit presented more than a "fair probability" that evidence of drug distribution could be recovered from room number 326 at the Econo-Lodge.  Accordingly, search warrant 5:19-mj-145 was supported by probable cause.

**B.    Search Warrant issued in 5:20-mj-74**

Mr. Stewart raises a number of challenges to the validity of the search warrant in 5:20-mj-74.  This search warrant sought the contents of seven cellular phones which were seized as a result of the executing the search warrant in 5:19-mj-145.  Mr. Stewart argues that the contents of the phones as seized pursuant to the search warrant 5:20-mj-74 should be suppressed 1) because the search warrant was based on the false statements of Agent BJ George and/or the product of investigatory misconduct; and 2) the search warrant generally lacked probable cause.

## 1. False statements and investigatory misconduct.

As a preliminary matter, a defendant is only entitled to a <u>Franks</u> hearing if he makes a substantial showing that an affiant to a search warrant application knowingly or intentionally, or with reckless disregard for the truth, made false statements or omitted material facts, and that the alleged statements were necessary to a finding of probable cause. <u>Franks v. Delaware</u>, 438 U.S. 154, 155-56 (1978). "Whether [the defendant] will prevail at that hearing is, of course, another issue." <u>Id.</u> at 172.

In order to challenge a finding of probable cause under <u>Franks</u>, a defendant must show, by a preponderance of the evidence, that (1) the affiant, in preparing the search warrant affidavit, deliberately and knowingly, or with reckless disregard for the truth, included falsehoods; and (2) the affidavit lacks sufficient content to support a finding of probable cause if the challenged information is set aside. <u>Franks</u>, 438 U.S. at 171-72; <u>United States v. Humphreys</u>, 982 F.3d 254, 259 n.2 (8th Cir. 1992). The same analysis applies to omissions of facts in that the defendant must show (1) that the affiant intentionally or recklessly omitted material facts thereby making the affidavit misleading; and (2) that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause. <u>Humphreys</u>, 982 F.3d at 259 n.2. The defendant's challenge must be more than conclusory and must be supported by the evidence. <u>Franks</u>, 438 U.S. at 171. The defendant must specify which parts of the affidavit are claimed to be false and must provide a statement of supporting reasons or an "offer of proof." <u>Id.</u>

"To show reckless disregard for the truth, we do not look simply at whether a statement included in the affidavit was true; rather, we ask whether, when looking at all the evidence available to the officer, the officer 'must have entertained serious doubts as to the truth of his [or her] statements or had obvious reasons to doubt the accuracy of the information he [or she] reported.'" United States v. Neal, No. 07-1941, at *4 (8th Cir. June 16, 2008) (quoting United States v. Schmitz, 181 F.3d 981, 986-987 (8th Cir. 1999) (quoting United States v. Clapp, 46 F.3d 795, 801 n.6 (8th Cir. 1995)) (alterations in original). Under this standard, "every fact recited in the warrant affidavit [need not] necessarily [be] correct." United States v. Buchanan, slip op. 08-3515 (8th Cir. July 27, 2009) (quoting Franks, 438 U.S. at 165).

An affidavit submitted in support of a search warrant carries a presumption of validity. Neal at *5 (citing Franks, 438 U.S. at 171). Showing that an affiant was negligent or made an innocent mistake is not sufficient to show a Franks violation. Id. "Nevertheless, an officer may not circumvent the Franks doctrine by providing only selective information to another officer who is unaware of the full information, and therefore includes false information or omits material information from an affidavit in support of a warrant." Id. (citing United States v. Davis, 471 F.3d 938, 947 n.6 (8th Cir. 2006) (citing Franks, 438 U.S. at 164 n.6) ("where law enforcement authorities are cooperating in an investigation, as here, the knowledge of one is presumed shared by all").

The court first addresses whether Mr. Stewart is entitled to a <u>Franks</u> hearing. The applicable standard for a <u>Franks</u> hearing is set forth above and incorporated herein by reference. In summary, a defendant is not entitled to an evidentiary hearing on the veracity of an affidavit in support of a search warrant simply by raising the issue. As a preliminary matter, a defendant is only entitled to a <u>Franks</u> hearing if he makes a substantial showing that an affiant to a search warrant application knowingly or intentionally, or with reckless disregard for the truth, made false statements or omitted material facts, and that the alleged statements were necessary to a finding of probable cause. <u>Franks v. Delaware</u>, 438 U.S. at 155-56 (1978). As the <u>Franks</u> Court explained:

> To mandate an evidentiary hearing [as to the veracity of statements in the affidavit in support of the search warrant], the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

<u>Id.</u> at 171. Even if falsehoods are demonstrated, if-setting aside those falsehoods- there is still probable cause to support the issuance of the warrant, no hearing is to be held. <u>Id.</u> at 171-72.

### a. Origins of the seized cells phones

Mr. Stewart's first reference to alleged misconduct is as follows:

> "...Agents Patterson and Rose confirm that only one phone was taken from Stewart by them as Stewart

7

> exited the room at the Econo-Lodge Motel. But Agent
> George's evidence inventory and report, item 7 and 10,
> claims two phones were taken from Stewart's person.
> One phone taken by Agent Patterson and a second
> phone taken off Stewart's person by Agent B.J. George.
> This constitutes another false report authored by Agent
> B.J. George in an attempt at planting a second phone
> on Stewart. The origin of the second phone cannot be
> established and consequently the seizure of the phone
> and contents much be suppressed."

(Doc. 255 at p. 5). The parties dispute the ownership of the cell phones, the location the cell phones were seized, and the identity of the agent seizing the cell phone. The parties spend a great deal of time discussing the search inventory sheet, the color of the cell phones seized, where the cell phones were seized from and to whom they belonged. The defendant invites the court to review incoming and outgoing call logs to confirm which phone was in his hand while exiting his room. The court need not resolve this factual dispute—it is a question of evidentiary foundation for the trial court to rule on at trial; and if admissible, a question of fact for the jury to resolve. It is not an issue properly brought before this court on a Fourth Amendment suppression motion. As discussed, *infra*, whether the phone was found on Mr. Stewart's person or in the hotel room and regardless of their ownership, the cell phones seized on December 11, 2019 at the Econo-Lodge as set forth in 5:20-mj-74, the search was constitutionally permissible.

Instead, the court must determine whether Mr. Stewart's insinuation that a cell phone was planted on his person merits suppression. As set forth above, Mr. Stewart's motion makes an argument that suggests, but doesn't clearly allege, that Agent B.J. George planted a cell phone on Mr. Stewart. His

brief specifically says, "…in *an attempt* at planting a second phone on Stewart." (emphasis added).  Mr. Stewart's reply brief then raises a theory that because the inventory report identifies one of the phones that was seized from the person of Edward Martin at the Econolodge #326, then the phone belonging to Edward Martin, "had to be confiscated, then transferred from whatever location Highway Patrol Officer Berry arrested Martin, to the Econolodge where Stewart was arrested . . . for the sole purpose of creating a false document that the phone was seized from Mr. Stewart's person." (Doc. 301 at p. 11).  Mr. Stewart does not seem to contest that his phone was seized out of his hand.  In fact, he states in his brief, "[w]hen law enforcement came in contact with the defendant after he stepped out of Econolodge room 326, law enforcement immediately confiscated the defendant's phone out of his hand while placing him in handcuffs." Id. at p. 6.  Instead, he asks the court to investigate whether Agent George actually planted Mr. Martin's phone "at the scene of defendant's arrest for the purpose of showing that it was seized from defendant's person." Id. at p. 12.

To the extent that Mr. Stewart argues that search warrant 5:20-mj-74 inaccurately identifies the location that the various cell phones were located and the ownership of the same, the court finds that Mr. Stewart has failed to show that the affiant, Agent George, knowingly or intentionally, or with reckless disregard for the truth, made false statements or omitted material facts.  At best, Mr. Stewart may establish inaccuracies in the inventory and/or Attachment A of 5:20-mj-74, but this fails to meet the high burden under

9

<u>Franks v. Delaware</u>.    Furthermore, the evidence wouldn't be suppressed under this theory pursuant to the good faith exception in <u>United States v. Leon</u>, 468 U.S. 897 (1984).

The court next addresses Mr. Stewart's allegation that Agent George authored a false report attributing Mr. Edward's phone to Mr. Stewart or may have planted Mr. Edward's phone at the scene of the arrest/or on Mr. Stewart's person.  "Prosecutorial misconduct, such as the use of perjured testimony, or other governmental corruption of the truth finding process may result in a deprivation of fundamental due process."  <u>Ray v. United States</u>, 588 F.2d 601, 603 (8th Cir. 1978).  "The fact that the alleged misconduct involves the F.B.I., rather than individuals in the prosecutor's office *per se*, does not change this result since, in either case, the government is involved in corruption of the truth-seeking function of the trial process."  <u>Id.</u>

Mr. Stewart's allegation of misconduct is not entirely clear as it changes throughout his briefing.  He does not affirmatively state that Agent George planted a cell phone on his person or in Econo-Lodge room 326.  Instead, he invites the court to conduct a <u>Franks</u> hearing to investigate the ownership and origins of the seized cell phones.  Mr. Stewart's reply brief asserts that his memorandum shows that "law enforcement officers intentionally planted or in a grossly negligent manner attributed the possession of a phone to Stewart that was not his which shows the officers were acting in bad faith." (Doc. 301 at p. 301).  The court finds that Mr. Stewart has failed to allege with any sort of

specificity or anything of evidentiary value which would merit reopening the detention hearing.

The court notes that there have been extensive evidentiary proceedings regarding the execution of the search warrant on the Econo-Lodge room 326. The first suppression hearing was held on February 12, 2020. Three witnesses (Special Agent Preston Patterson, Special Agent Dan Rose, and Special Agent BJ George) testified during the approximate two-and-a-half-hour hearing. The inventory of items seized from the Econo-Lodge room was admitted into evidence. Mr. Stewart was personally present in the courtroom. The second evidentiary hearing was held on October 19, 2020. Four witnesses (Special Agent Preston Patterson, Investigator Jesse Fagerland, Special Agent Dan Rose, and Special Agent BJ George) testified during the approximately three-hour hearing. Mr. Stewart appeared via videoconference from the Pennington County Jail, due to the Covid-19 pandemic; however, the court afforded opportunities for defense counsel to have private communications throughout the hearing with Mr. Stewart. The second evidentiary hearing was set in response to Mr. Stewart's Motion to Dismiss Superseding Indictment (Doc. 179) and Supplemental Motion to Dismiss Indictment (Doc. 222). Both pleadings allege prosecutorial misconduct and investigatory misconduct.

The court finds that Mr. Stewart is not entitled to a Franks hearing on the issues he raises in his most recent suppression motion because he has not made a substantial showing that Agent George knowingly, or with reckless disregard made false statements or omitted material facts when he applied for

11

a search warrant.  Defendant has had ample opportunity to litigate this matter and given the misconduct issues raised in Docket 179 and Docket 222, Mr. Stewart has already had a <u>Franks</u> hearing.  In fact, he challenged the agent's credibility during the October 19, 2020, suppression hearing.  Nothing in the record before the court would support a finding that Agent George engaged in misconduct which would warrant suppression.  The court finds that Mr. Stewart's latest motion to suppress and request for an evidentiary hearing is simply an attempt to take a third bite at the apple.

### b. Paragraph 72 of search warrant 5:20-mj-74

Mr. Stewart asserts that search warrant 5:20-mj-74 "was based on false statements of Agent B.J. George."  <u>Id.</u> at p. 6.  He cites paragraph 72 of the affidavit as the offending paragraph containing false statements.  This paragraph details recorded jail phone calls between Mr. Stewart and Sasha Cook; discusses the history of shipped package between cook at co-defendant Edward Martin; and the possible location of Cook's residence.  The court has previously held an evidentiary hearing which addressed these issues at length. The court finds that paragraph 72 is consistent with the evidence already in the record and that Mr. Stewart has failed to make a substantial showing that this statement was made with reckless disregard for the truth, or that this paragraph was necessary to a finding of probable cause.

### c. Whether the search warrant was supported by probable cause.

As noted above, probable cause for the issuance of a warrant exists if there is a "fair probability that contraband or evidence of a crime will be found

in a particular place." <u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983).  This magistrate judge previously found probable cause to issue each search warrant.  The eighty-seven-paragraph affidavit contains a detailed probable cause section based on law enforcement's investigation into the drug distribution conspiracy.  Much of this information provided the basis for the search warrant in 5:19-mj-145.  Paragraphs 67-73 of 5:20-mj-74 details the incriminatory natures of item seized as a result of executing the search warrant on December 11, 2019.  These items include cell phones, methamphetamine, a digital scale, drug paraphernalia, and a large amount of cash. These facts along with the rest of the detailed incriminatory information in the affidavit created a fair probability that evidence of a crime would be found in the cell phones to be searched.  <u>See</u> <u>Gates</u>, 462 U.S at 238.  Defendant's argument is without merit, and his request to suppress evidence obtained from the search warrant on this basis should be denied.

## II. Whether the Search Warrant in 5:20-mj-74 was overly broad or lacked particularity

Mr. Stewart spends a significant portion of his brief arguing that Fourth Amendment protections extend to cell phones.  (Doc. 255 at pp. 8-11).  This argument is irrelevant to the facts of this case given that it is undisputed that law enforcement obtained a search warrant prior to searching the phone.  Instead the proper inquiry, which is later identified by Mr. Stewart, is whether the search warrant failed to particularly describe the place to be searched and the thing that was to be seized, and therefore was invalid.  (Doc. 255 at p. 11).

The Warrant Clause of the Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. "Particularity prohibits the government from conducting 'general, exploratory rummaging of a person's belongings.'" United States v. Sigillito, 759 F.3d 913, 923 (8th Cir. 2014) (quoting United States v. Saunders, 957 F.2d 1488, 1491 (8th Cir. 1992)). "To satisfy the particularity requirement of the Fourth Amendment, the warrant must be sufficiently definite to enable the searching officers to identify the property authorized to be seized." United States v. Summage, 481 F.3d 1075, 1079 (8th Cir. 2007) (internal quotation omitted).

Mr. Stewart argues that the affidavit relied upon "letters to Stewart and Cook from Martin; Stewart's presence in the Econo-Lodge room in possession of $5,066 in cash; the false accusation that Stewart gave an address in Rapid City; the false allegation that Cook resided in Rapid City. There is no allegation that Stewart was in possession of any cell phone." (Doc. 255 at p. 7). The court rejects this argument because it is inaccurate and unsupported by the record. Attachment A, which is incorporated by reference into both the Application for a Search Warrant and the Search Warrant, identifies a cell phone and describes it as being found on Jesse Stewart's person on December 11, 2019, at the Econo-Lodge. The search warrant and its application identifies two other cell phones located in a shoe box by the door of Econo-Lodge Room 326. (5:20-mj-74-DW at Doc. 1 p. 2). Furthermore, paragraph 70

14

sets forth that a cell phone was recovered from Mr. Stewart's hand. The balance of the paragraph sets forth specific details regarding evidence seized from the hotel room which is indicative of drug distribution activities.  Id. at pp 25-26.  Paragraphs 81-84 set forth information regarding the affiant's training and experience regarding drug traffickers use of cell phones and their storage capabilities.  Attachment B describes the various types of content within the phone that is authorized to be seized.  Id. at p. 3.  The search warrant was not overly broad, nor did it fail to particularly describe the things to be seized.

**III.    Whether law enforcement exceeded the scope of the search warrant**

Mr. Stewart argues that the evidence must be suppressed because the search warrant 5:19-mj-145 only authorized the officers to search and seize property in the hotel room belonging to Mr. Martin.  (Doc. 255 at p. 4). Further, Mr. Stewart argues that "there was no allegation in the affidavit that any cell phones were found either on the person of Jesse Stewart, Room 326 of the Econo-Lodge, or in any property belonging to Stewart, upon which any search warrant could be executed."  (Doc. 255 at p. 7).

**A. The 5:19-mj-145 search warrant authorized the search and seizure of property in hotel room belonging to Mr. Martin.**

Mr. Stewart argues that since the search warrant doesn't mention him and doesn't specifically authorize the search of his person or his property, the evidence must be suppressed.  As discussed *supra* there was probable cause to search Econo-Lodge, Room 326 and the property contained therein.

Although not entirely clear, it appears that Mr. Stewart is arguing that because he was merely a guest, and not the target of the intended search

which was for the room's registered occupant, Edward Martin, the evidence seized from his person and the room should be suppressed.

The expectation of privacy associated with a person's home applies "with equal force to a properly rented hotel room during the rental period." United States v. Rambo, 789 F.2d 1289, 1295 (8th Cir. 1986).  A "mere visitor" to someone else's hotel room has no reasonable expectation of privacy, because no sufficiently close connection to the premises exists.  See Gomez, 16 F.3d at 256.  Factors determining a sufficiently close connection with a hotel room include whether the defendant paid for the room or claimed the room as his own; whether he was registered as a hotel guest; and whether he was the room's sole occupant.  Contrast United States v. Sturgis, 238 F.3d 956, 958 (8th Cir. 2001) (finding no expectation of privacy where defendant told agents he was "merely visiting" friend's hotel room, and friend paid for room); United States v. Carter, 854 F.2d 1102, 1105–06 (8th Cir. 1988) (finding no expectation of privacy where defendant's friend reserved and paid for motel room; defendant never came to room; and none of defendant's personal belongings were found in hotel room); with Williams, 521 F.3d at 906 (finding reasonable expectation of privacy where registered guest informed hotel that "my friend [the defendant] is going to come in," and defendant was only person occupying room).

Therefore, if Mr. Stewart is claiming that he had no ties to the hotel room, then he had no objectively reasonable expectation of privacy;

16

accordingly, he does not have standing to claim the hotel room was illegally searched.  See Williams, 521 F.3d at 906.

On the other hand, if Mr. Stewart was the sole occupant of the room or otherwise can establish that he had a reasonable expectation of privacy in the hotel room, then the court's previous analysis that the search warrant was supported by probable cause applies.  The property seized as a result of the execution of 5:20-mj-74 from the hotel room was constitutional.

Furthermore, Mr. Stewart's argument that the search warrant only authorizes the seizure of property belonging to Mr. Martin is without merit. Attachment B authorizes the types of evidence to be seized; it is not limited in any fashion to any particular property owner.  For purposes of a Fourth Amendment analysis, it is irrelevant who owned the property which was seized from room 326 of the Econo-Lodge.

### B. Whether seizing the phone off Mr. Stewart's person in the hallway was outside the scope of the search warrant

Mr. Stewart asserts that the phone which was taken out of his hand occurred outside of room 326, and therefore, exceeds the scope of the search warrant and must be suppressed.  (Doc. 255 at p. 5).  The government argues that the cell phone recovered from Mr. Stewart's hand while he was detained was passcode locked and therefore the contents or other information of evidentiary value, other than the phone number assigned to the phone, were unable to be retrieved rendering the suppression motion as it relates to the phone retrieved from Mr. Stewart a moot issue.  (Doc. 281 at p. 3).

First, the court notes that the parties dispute which phone was seized from Mr. Stewart's hand and which phones were seized from within the hotel room. Mr. Stewart invites the court to review call logs to determine the owner of the phones and the location where they were found and how the phones came to be placed in those locations. (Doc. 301 p. 2). Such an inquiry is not necessary to determine whether the phones were seized in violation of the Fourth Amendment.

Search warrant 5:19-mj-145 authorized the search and seizure of the hotel room connected to Edward Martin more fully described in Attachment A. The court found probable cause to believe that the hotel room was being used for illegal drug distribution activities. The search warrant authorized the seizure of cell phones located at the locations listed in Attachment A.

Mr. Stewart argues, "Stewart's phone was taken away from him as he exited the motel room, before agents Patterson and Rose escorted him back inside the motel room and purportedly asked for Stewart for consent to search his person. So, the phone taken from Stewart in the hallway after he exited the room does not fall within the authority of the search warrant issued in 5:19-MJ-145." (Doc. 255 at p. 5).

The transcripts from the two evidentiary hearings establish that when law enforcement approached room 326 of the Econo-Lodge, they heard a male voice within the room. (Doc. 125 at p. 11). It appeared that the unknown male occupant was talking on his phone and a female voice could be heard, presumably on speaker phone. Id. Law enforcement was concerned that

18

possibly another male was in the hotel room.  Additionally, law enforcement was concerned that the male occupant may be talking to Sara Skinner on the phone and potentially warn of her impending arrest.  The search warrant and testimony presented at the evidentiary hearing establishes that firearms were involved with the drug conspiracy.  For all of these reasons, law enforcement used a ruse to have the male occupant exit room.  Id. at p. 15.  Immediately upon exiting the room, Mr. Stewart was detained.  Id. at p. 26.   Special Agent Preston Patterson testified, "Mr. Stewart had a cell phone in his hand that was evident to me that it was -- the screen of the still activated, like he had just gotten off the phone.  Immediately I went to grab the phone, as well as Mr. Stewart's arm, so we could secure him.  He was reluctant in initially providing me that phone, but ultimately cooperated in turning the phone over to me."  Id. at p. 16.  Mr. Stewart was then put into handcuffs.  Id. at 22, 48.  Within a minute, Mr. Stewart was taken back into the hotel room.  Id. at 26-27; (Doc. 238 at p. 13-14).

There is no question that had agents entered the room and seized the cell phone from Mr. Stewart while in the room that the search warrant would have permitted the seizure.  If Mr. Stewart had been called into the hallway, placed in handcuffs, and returned to the room with the cell phone on his person, the search warrant would have also permitted the seizure.  The question is whether the seizure of Mr. Stewart's cell phone taken from his person immediately after he crossed the threshold of the hotel room renders the seizure in violation of the Fourth Amendment.  Mr. Stewart fails to cite any authority, and the court

is not aware of any authority, that by stepping over the threshold from an area described to be searched and authorized to be searched and seized, renders the seizure unconstitutional.

Furthermore, even if the seizure of the cell phone was technically outside the scope of the search warrant, the evidence should not be suppressed if the officers acted in an objectively reasonable manner when they seized the cell phone.  "Evidence seized even through a deficient warrant is still admissible if the officers executing the warrant were objectively reasonable in relying upon it."  United States v. McCaster, 193 F.3d 930, 933 (8th Cir. 1999) (citing United States v. Leon, 468 U.S. 897 U.S. 897 (1984).  The facts set forth in the evidentiary hearing, which the court finds to be credible, establish that Mr. Stewart was using a cell phone in the hotel room which was the location to be searched; he exited from the hotel room while the cell phone was either recently used or still engaged; and law enforcement immediately seized it. These facts support a finding that it was reasonable for law enforcement to believe that the cell phone taken from Mr. Stewart fell within the scope of the warrant.

## IV.    Rule 702 Challenge- extraction of contents

Mr. Stewart argues that the contents of the cell phone should be suppressed because the DCI Agent intel analysts lacked the expert forensic analysis certification.  This issue is not a matter of suppression.  This is an evidentiary issue for the trial court to determine if the defendant properly

raises a Daubert challenge or if the defendant properly raises a foundation objection at trial.

## CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendant's Motion to Suppress (Doc. 255) be denied.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require *de novo* review by the District Court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 19th day of May, 2020.

BY THE COURT:

DANETA WOLLMANN
United States Magistrate Judge