UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> JESSE LAMONE STEWART, <br><br> Defendant. | 5:19-CR-50167-07-KES <br><br> ORDER ADOPTING REPORT AND RECOMMENDATION AS MODIFIED AND DENYING MOTION TO DISMISS SUPERSEDING INDICTMENT |

Defendant, Jesse Lamone Stewart, is charged with conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. Docket 88. Stewart filed a motion to dismiss the Superseding Indictment. Docket 179. Stewart alleges that the Superseding Indictment: (1) fails to state an offense as required by Federal Rule of Criminal Procedure 7(c)(1); (2) fails to charge essential elements of the counts alleged against Stewart; (3) is so vague that it violates Stewart's due process rights; and (4) is based upon investigatory and prosecutorial misconduct that has tainted Stewart's right to a fair trial. *Id.* Stewart also filed a supplemental motion to dismiss the Superseding Indictment, further addressing his claims of investigatory and prosecutorial misconduct. Docket 222. The United States resists Stewart's motion and supplemental motion to dismiss. Dockets 185, 249. The court referred Stewart's motions to Magistrate Judge Daneta Wollmann under 28 U.S.C. § 636(b)(1)(B). After holding an evidentiary hearing,

Magistrate Judge Wollmann recommended Stewart's motion and supplemental motion to dismiss be denied. Dockets 228, 334. Stewart filed objections to the Report and Recommendation. Docket 341. After a de novo review of the Report and Recommendation and a review of the record, the court adopts the Report and Recommendation as modified below and denies Stewart's motion and supplemental motion to dismiss the Superseding Indictment.

## LEGAL STANDARD

This court's review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure. The court reviews de novo any objections to the magistrate judge's recommendations with respect to dispositive matters that are timely made and specific. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Because motions to dismiss a superseding indictment are considered dispositive matters, a magistrate judge's recommendation regarding such a motion is subject to de novo review. 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 673 (1980) (holding that dispositive motions under 28 U.S.C. § 636(b)(1) are subject to de novo review by the district court). In conducting a de novo review, this court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Craft*, 30 F.3d 1044, 1045 (8th Cir. 1994).

## FACTS

A full recitation of the facts can be found in the Report and Recommendation on Stewart's first motion to suppress (Docket 135) and the

Report and Recommendation on the pending motions to dismiss the Superseding Indictment (Docket 334). The court has conducted a de novo review of the evidence[1] and incorporates herein the facts as set forth in Magistrate Judge Wollmann's Report and Recommendation.

## DISCUSSION

Stewart raises eight objections to Magistrate Judge Wollmann's Report and Recommendation related to his claims of investigatory and prosecutorial misconduct.[2] Docket 341. Stewart objects to Magistrate Judge Wollmann's findings that:

> (1) Pennington County Sherriff's Office Investigator Dan Rose and South Dakota Division of Criminal Investigation Special Agent (SA) Preston Patterson did not provide false testimony at grand jury proceedings and at the suppression hearing held before Magistrate Judge Wollmann on February 12, 2020 about Stewart wearing a coat at the time he was detained;
>
> (2) SA BJ George did not provide false testimony before the grand jury when he testified that Stewart told law enforcement Stewart's address was 3213 West Main Street, which is the address of a UPS store;
>
> (3) SA George did not provide false testimony before the grand jury concerning a phone call between Stewart and Sasha Cook;

---

[1] An evidentiary hearing was held on October 19, 2020. *See* Dockets 228, 238.

[2] Stewart does not object to Magistrate Judge Wollmann's recommendation that the Superseding Indictment sufficiently alleges each of the essential elements of conspiracy to distribute a controlled substance and provides enough detail to put Stewart on notice of the charge against him. *See* Docket 341; Docket 334 at 6. The court agrees with and adopts Magistrate Judge Wollmann's reasoning and conclusion on this issue. Thus, Stewart's motion to dismiss the Superseding Indictment on grounds of insufficiency and vagueness is denied.

(4) SA George did not provide false testimony before the grand jury when he testified that Edward Martin, a co-defendant in this case, mailed packages to Cook;

(5) Assistant United States Attorney (AUSA) Kathryn Rich did not provide false and misleading statements during the grand jury proceeding when she asked SA George about Martin and his associates using postal services to receive methamphetamine and send money;

(6) SA George did not make false statements in the affidavit in support of the search warrant; and

(7) SA Patterson did not falsely testify during the suppression hearing on February 12, 2020 that Stewart consented to the seizure of his cellphone and search of his person.

Stewart also objects (8) to the failure of the court to address his claim that AUSA Rich elicited false and misleading testimony during grand jury proceedings when she asked SA George about Stewart's connection to Cook. The court will address each objection in turn.

I. **Claims of Investigatory and Prosecutorial Misconduct During Grand Jury and Suppression Hearing Proceedings.**

   A. **Legal Standard**

"There is a strong presumption of regularity in grand jury proceedings, and the defendant has a heavy burden in proving irregularities." *United States v. McKie*, 831 F.2d 819, 821 (8th Cir. 1987) (citation omitted). Generally, "a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendant[]." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988). Under this prejudice standard, "dismissal of the indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,'

4

or if there is a 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Id.* at 256 (quoting *United States v. Mechanik*, 475 U.S. 66, 78 (1986) (O'Connor, J., concurring)). Mistakes and misstatements in grand jury testimony, on their own, do not justify dismissal of an otherwise valid charge in an indictment. *United States v. Moore*, 184 F.3d 790, 794 (8th Cir. 1999). For an indictment to be dismissed on the basis of misstatements or even perjurious testimony, the defendant must show that the misstatements were material. *Id.* "As long as there is some other competent evidence to sustain the charge, the charge should not be dismissed." *Id.*

Regarding Stewart's claims that the government offered false testimony during the suppression hearing, Stewart must show: "(1) the prosecution used perjured testimony; (2) the prosecution should have known or actually knew of the perjury; and (3) there was a reasonable likelihood that the perjured testimony could have affected the jury's verdict." *United States v. Flores-Lagonas*, 993 F.3d 550, 561 (8th Cir. 2021) (quoting *United States v. Bass*, 478 F.3d 948, 951 (8th Cir. 2007)). Thus, Stewart must show not only that the government offered perjured testimony at the suppression hearing, but also that the government knew or should have known it was offering perjured testimony. *Id.* Likewise, Stewart must show that the perjured testimony was material. *Id.* (citing *United States v. Bigeleisen*, 625 F.2d 203, 208 (8th Cir. 1980)).

**B.  Analysis**

**1.  Testimony concerning Stewart's coat**

Stewart objects to Magistrate Judge Wollmann's finding that Stewart failed to meet his burden to prove that either SA Patterson or Investigator Rose provided false testimony at grand jury proceedings or at the suppression hearing when they testified that Stewart wore a coat at the time he was detained. Docket 341 at 1. At the February 12, 2020 suppression hearing, SA Patterson testified that Stewart wore a coat when he encountered Stewart prior to executing the search warrant. Docket 125 at 18. At the evidentiary hearing, SA Patterson and Investigator Rose testified that Stewart was wearing a coat when they made contact with him outside of his hotel room, but the coat was later removed from Stewart at some point near the beginning of the search of the room. Docket 238 at 8-9, 52. SA Patterson testified that no photos were taken of Stewart while he wore the coat in the hallway. *Id.* at 14. Stewart contends that he could not have been wearing a coat at the time he was detained because he is pictured without a coat on in Exhibit 1 (Docket 231 at 1) and the coat is depicted in Exhibit 2 (Docket 231 at 2), which is the overall photo of the hotel room where Stewart stayed prior to the search of the room. Docket 341 at 2-3. As a result, Stewart argues that the evidence does not support the finding that Stewart was wearing a coat when he was initially detained. *Id.* at 1.

Here, Stewart's reliance on Exhibit 2 to prove that he was not wearing a coat at the time he was detained is misplaced. Pennington County Sheriff's

Office Investigator Jesse Fagerland testified at the evidentiary hearing that his primary responsibility at the search of Stewart's room was to photograph the scene throughout. Docket 238 at 32. Exhibit 1 depicts Stewart in the hallway of the hotel without a coat on, Exhibit 2 depicts the overall scene of the hotel room prior to the execution of the warrant but after the room was cleared by officers, and Exhibit 3 depicts the hotel room after the execution of the search warrant. *Id.* at 36, 39, 41-42; *see also* Docket 231 at 1-3. Investigator Fagerland testified that the chronological order of those exhibits is Exhibit 2, Exhibit 1, and Exhibit 3. Docket 238 at 45. Investigator Fagerland also testified that it was "absolutely" possible that Stewart's coat could have been removed from the point that SA Patterson and Investigator Rose detained Stewart to the point that Investigator Fagerland prepared his camera equipment and took the photos of the scene and Stewart. *Id.* Stewart's coat was likely removed from his person after his initial detention but before he was photographed in the hallway of the hotel. Stewart fails to present any evidence that SA Patterson or Investigator Rose lied about the presence of Stewart's coat during any proceeding.

Further, even if Stewart was not wearing a coat, Stewart fails to show how that is material to the charge against him. Not wearing a coat would have had little, if any, effect on the grand jury's decision to indict Stewart. If, as Stewart contends, the coat was in the room rather than on his person, it would have been lawfully searched pursuant to the search warrant. Thus. Stewart's objection on this ground is overruled.

7

### 2. Testimony concerning Stewart's address

Stewart next objects to Magistrate Judge Wollmann's finding that Stewart failed to meet his burden of proving SA George made a false statement to the grand jury when he stated Stewart provided his address as 3213 West Main Street in Rapid City, South Dakota, which is the address of a UPS store. Docket 341 at 3. Stewart relies on his reply brief, which Magistrate Judge Wollmann considered in her Report and Recommendation. *Id.*; *see* Docket 277 at 3-5. Stewart also contends that law enforcement had Stewart's correct address at the time of the grand jury proceeding because Stewart had been arrested and booked. Docket 341 at 3. Stewart does not present any evidence that law enforcement had Stewart's correct address at the time of the grand jury proceedings, nor does he present any new evidence not considered by Magistrate Judge Wollmann in her Report and Recommendation. Stewart also fails to demonstrate how stating the incorrect address would be material to the charge or the grand jury's decision to indict. This court agrees with and adopts Magistrate Judge Wollmann's reasoning and conclusion on this issue. Thus, Stewart's objection on this ground is overruled.

### 3. Testimony concerning the phone call

Stewart next objects to Magistrate Judge Wollmann's finding that SA George did not provide false or misleading testimony to the grand jury when he testified that he listened to a phone call between Stewart and Sasha Cook during which Stewart directed Cook "in regards to moving and getting money out of the banks and having Sasha leave town." *Id.* at 4; Docket 230 at 18.

8

Stewart claims that the call was about Cook leaving from North Carolina to Las Vegas, not from Rapid City to Las Vegas. Docket 341 at 4. He contends that the characterization of the call was "an attempt by the government to insinuate [Cook] was involved in drug distribution with [Stewart] in Rapid City and was leaving Rapid City because [Stewart] had been arrested." *Id.*

Here, Stewart fails to demonstrate that the government provided false testimony. Stewart does not offer any evidence to prove that the government knew that Cook was located in North Carolina rather than Rapid City at the time of the call other than a vague citation to "Pennington County Jail records for December 11, 2019, to December 12, 2019." *Id.* Stewart did not provide those jail records for the court's review. Stewart has not provided any evidence, except conclusory statements, that proves that Cook was actually in North Carolina at the time of the call. Additionally, law enforcement never testified during the grand jury proceeding, the suppression hearing, or the evidentiary hearing that Cook was located in Rapid City at the time of the call. In fact, SA George testified during the evidentiary hearing that he did not know what town Cook was in when she spoke to Stewart. Docket 238 at 74.

Even if Cook was located in North Carolina rather than Rapid City, Stewart fails to show how this mischaracterization would be material to the charges against him. It makes little difference whether Cook was in Rapid City or North Carolina at the time of the call. The important information in the call is that Stewart asked Cook to get money out of the bank and leave town, which Stewart does not challenge. Stewart fails to show how any alleged

9

mischaracterization had a "substantial influence" on the grand jury's decision to indict. *Bank of Nova Scotia*, 487 U.S. at 254. Thus, Stewart's objection on this ground is overruled.

### 4. Testimony concerning packages

Stewart next objects to Magistrate Judge Wollmann's finding that Stewart failed to meet his burden to prove that SA George testified falsely concerning packages sent through the mail by co-defendant Edward Martin that were received by Cook. Docket 341 at 4. Stewart contends that SA George was deliberately misleading to the grand jury causing it to believe that drugs or money were sent through the mail when George testified that Cook was receiving packages for Martin. *Id.* Stewart alleges that this testimony created the misleading impression that he and Cook were participants in receiving money and drugs in the mail. *Id.*

Here, SA George's exact testimony was that "Sasha Cook is of interest to law enforcement because she has received three packages for Mr. Martin in the mail in the past." Docket 230 at 18. SA George never testified that there were either drugs or money in these specific packages received by Cook. SA George expanded that Cook was a person of interest because law enforcement knew that Martin and his associates used UPS, FedEx, and the USPS to receive methamphetamine and send money. Docket 230 at 19. SA George never testified that Cook received drugs or money in the mail for Martin because he did not know. Docket 238 at 77, 93. Stewart fails to carry his burden to prove that SA George testified falsely or in a misleading manner before the grand jury

10

or that any false or misleading testimony substantially influenced the grand jury's decision to indict. Thus, Stewart's objection on this ground is overruled.

### 5. Question by AUSA Rich to SA George

Stewart next objects to Magistrate Judge Wollmann's finding that Stewart failed to carry his burden of proving that AUSA Rich made a false and misleading statement when she asked SA George "[s]o is it fair to say that through the entire investigation that Mr. Martin and these associates are using UPS, FedEx, [and the] Postal Service to receive methamphetamine in the mail and then also send out packages of money occasionally?" Docket 341 at 4-5; Docket 230 at 19. SA George answered the question affirmatively. Docket 230 at 19. Stewart contends that there is no evidence "that Martin ever sent or received money or drugs through the mail to or from Jesse Stewart or Sasha Cook." Docket 341 at 5.

Here, Stewart fails to carry his burden to prove that AUSA Rich made a false or misleading statement when she asked SA George the question. SA George testified that the government has records of Stewart wiring money via Western Union or other wire transfer services as part of the methamphetamine distribution conspiracy. Docket 238 at 78. SA George also testified that, based on the investigation, Martin and his associates used various postal services to receive meth and send out money. *Id.* at 77-78. As Magistrate Judge Wollmann stated, it is the United States' position that Martin and his associates used UPS, FedEx, and the USPS to receive methamphetamine and send money. Docket 334 at 13. Whether or not Stewart is actually part of that conspiracy is

11

for a jury to determine at trial. Thus, Stewart's objection on this ground is overruled.

## 6. Consent to search

Stewart next objects to Magistrate Judge Wollmann's finding that Stewart consented to the search of his person. Docket 341 at 7. Stewart maintains that SA Patterson and Investigator Rose falsely testified at the suppression hearing that Stewart consented to the search of his person. *Id.* The District Court already determined that Stewart gave his consent to the search of his person. Docket 162 at 5-6. The District Court agreed with Judge Wollmann's finding that SA Patterson and Investigator Rose testified credibly about receiving Stewart's consent. *Id.* Stewart fails to present any new evidence as to why the District Court's prior determination should be reconsidered and reversed. Thus, Stewart fails to show that the government offered perjured testimony at the suppression hearing. Stewart's objection on this ground is overruled.

## 7. Claim not addressed

Stewart next objects to the failure of the court to address the claim that AUSA Rich elicited false testimony during the grand jury proceeding when she asked SA George a question about Stewart's connection to Cook. Docket 341 at 5-6. AUSA Rich asked SA George, "[a]nd [Stewart] has the connection with Sasha Cook whose name was part of the package distribution?" Docket 230 at 21. SA George answered affirmatively. *Id.* This question was prompted by a question from a grand juror who asked what Stewart's role in the distribution

12

conspiracy was. *Id.* at 20. Stewart alleges that the question and affirmative answer were false because there has not been any evidence to show that Cook was a part of the drug distribution conspiracy. Docket 341 at 5.

Here, AUSA Rich's question and SA George's answer were not false or misleading. Stewart misrepresents the question that AUSA Rich asked George by omitting the term "package," so the question reads "[a]nd he (the defendant) has connection with Sasha Cook whose name was part of the distribution?" *Id.* (parenthetical in original). When the question is phrased correctly, it is evident that neither AUSA Rich nor SA George provided false or misleading testimony. Stewart does, in fact, have a connection to Cook—the two of them spoke over the phone about getting money out of the bank and having Cook leave town. Docket 230 at 18. SA George also testified that he believed that Stewart and Cook were in a relationship and that Cook cares for Stewart's child while he is in custody. Docket 238 at 79. Additionally, there is evidence that Cook's name is part of the package distribution, as asked by AUSA Rich. SA George testified that Cook was of interest to law enforcement because she received three packages for Martin in the mail. Docket 230 at 18. Again, SA George never testified that those three packages contained drugs or money, but that is not what AUSA Rich's question asked of him. Stewart fails to demonstrate that the government offered false or misleading testimony at the grand jury proceeding. Thus, Stewart's objection on this ground is overruled.

## II. Claims of Misconduct in the Affidavit in Support of the Search Warrant

Finally, Stewart objects to Magistrate Judge Wollmann's finding that Stewart failed to meet his burden to prove that SA George either lied or showed reckless disregard for the truth in his affidavit in support of the search warrant. Docket 341 at 6-7. Specifically, Stewart argues that the following statement in the affidavit in support of the search warrant was false: "Cook's current address has not been identified in Rapid City; however, it is believed that Cook may reside near 3621 West Chicago Street. Keeler Stands previously identified this approximate location to law enforcement when he drove Martin to Cook's address to pick up a package containing methamphetamine in September 2019." Docket 222-3 at 2-3; Docket 341 at 6-7. Stewart argues that there is no evidence that Keeler Stands ever mentioned Cook or taking Martin to Cook's address in his proffer statement. Docket 341 at 7.

An affidavit in support of an application for a search warrant must be supported by probable cause. *Franks v. Delaware*, 438 U.S. 154, 165 (1978). The affidavit supporting the search warrant is presumed to be valid. *Id.* at 171. To successfully challenge probable cause and the validity of the search warrant in this case, Stewart must prove by a preponderance of the evidence that SA George "included in the affidavit 'a false statement knowingly and intentionally, or with reckless disregard for the truth,' and (2) 'the affidavit's remaining content [was] insufficient to establish probable cause.' " *United States v. Buchanon*, 574 F.3d 554, 561 (8th Cir. 2009) (alteration in original) (quoting

*United States v. Humphreys*, 982 F.2d 254, 258 n.2 (8th Cir. 1992)). An affidavit in support of a search warrant must be based on truthful statements, but that "does not require that 'every fact recited in the warrant is necessarily correct.'" *Id.* at 563 (quoting *Franks*, 438 U.S. at 165). This means the affidavit "must be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Id.* (quoting *Franks*, 563 U.S. at 165). The correct test is "whether, viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his [or her] statements or had obvious reasons to doubt the accuracy of the information he [or she] reported." *United States v. Schmitz*, 181 F.3d 981, 987 (8th Cir. 1999) (alterations in original) (citation omitted).

Stewart's attack on the truthfulness of the affidavit must be more than merely conclusory. *Franks*, 438 U.S. at 171, "There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Id.* That is, they should point exactly where in the record there is a false statement and should be accompanied by either affidavits or otherwise reliable statements. *Id.* If these requirements are met, Stewart must then show that the search warrant lacks probable cause without the false statements included. *Id.* at 171-72.

Here, Stewart does not meet his burden to prove that SA George included a false statement, either knowingly or recklessly, in the affidavit in support of the search warrant. SA George did not say that he was certain that Cook lived at the address provided in the affidavit. In fact, SA George noted that Cook's

15

address in Rapid City had not been positively identified, but it was believed she lived near 3621 West Chicago Street. Docket 222-3 at 2. SA George testified that the sources of this information were Keeler Stands and another confidential informant. Docket 238 at 72. Stewart does not provide any evidence that SA George's statement is false other than the conclusory allegation that Stands' proffer says nothing about Cook's address. But looking to a portion of law enforcement's interview with Stands, Stands does describe driving Martin to an address near the location named in the affidavit. *See* Docket 231 at 7. Even if Cook's potential address did not come from Stands' proffer, it may have come from Stands or another informant at another time. Stewart fails to convince the court that SA George either entertained serious doubts about the truthfulness of the statement or had obvious reasons to doubt the accuracy of the information provided by Stands or the other confidential informant. Additionally, even if SA George included a false statement in the affidavit, Stewart does not attempt to demonstrate how the remainder of the affidavit lacks probable cause. The affidavit appears to have sufficient information without the statement about Cook's address to provide probable cause to issue the search warrant regarding Stewart. Thus, Stewart's objection on this ground is overruled.

## CONCLUSION

Stewart fails to meet his burden to prove that the government offered false or misleading testimony either before the grand jury or during the suppression hearing. Additionally, Stewart fails to meet his burden that SA

George provided false information in his affidavit in support of the search warrant. The court adopts Magistrate Judge Wollmann's report and recommendation as modified and denies Stewart's motion and supplemental motion to dismiss the Superseding Indictment. Thus, it is

ORDERED that the report and recommendation (Docket 334) denying Stewart's motion and supplemental motion to dismiss the Superseding Indictment is adopted as modified by this opinion.

Dated July 14, 2021.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE